(Reap. Dec. 8386)

KENNEDY BROS. ARMS COMPANY
THE KENNOC COMPANY } *v.* UNITED STATES

Entry Nos. A–249; A–86.

(Order dated January 31, 1955)

*Wallace & Schwartz* (*Barnes, Richardson & Colburn* by *Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiffs.

*Warren E. Burger*, Assistant Attorney General (*John J. Antus*, trial attorney), for the defendant.

ORDER

LAWRENCE, Judge: On motion of counsel for the plaintiffs, to which no objection was raised, the appeals for reappraisement enumerated above were consolidated for trial and decision, it being agreed by the respective parties that the merchandise involved in both appeals is similar and the issues are the same.

The merchandise, consisting of various items of Buoy-O-Boy floats and cushions, was invoiced and entered at certain unit prices in United States currency, less 25 per centum discount, whereas it was appraised at said unit prices in Canadian currency, net, tax included.

Appraisement was made on the basis of foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)).

Plaintiffs herein contend that there is no foreign value for such or similar merchandise; that export value, as defined in section 402 (d) of the Tariff Act of 1930 (19 U. S. C. § 1402 (d)), is the proper dutiable value; and that the export value is the same as the entered value.

In support of their contentions, plaintiffs herein offered, and there was received in evidence as collective exhibit 1, an affidavit of J. J. Cartledge, manager of the exporting company, to which is attached a printed sheet explanatory of the regulations of the Canadian Wartime Prices and Trade Board.

The evidence offered by defendant consisted of the following three exhibits:

Collective exhibit A—Report of Ralph E. Nelson, customs agent in charge at St. Paul, Minn., together with various letters attached thereto.

Collective exhibits B and C—reports of William T. Murphy, Treasury representative in charge, Toronto, Canada, with various miscellaneous papers attached thereto.

It was agreed between counsel for the parties hereto that, although the dates of exportation of the merchandise covered by the two appeals before the court are about a year apart, the two cases will stand upon the same record as to value, inasmuch as the trade conditions remained approximately the same throughout the year span.

It is plaintiffs' contention that foreign value did not exist for the reason that the market price of this merchandise in Canada was controlled by the Canadian Government through the Wartime Prices and Trade Board at the manufacturers', wholesalers', and retailers' levels. Since the only element of the appraisement based upon foreign value, as defined in section 402 (c), as amended, *supra*, which is attacked by the plaintiffs herein, is the factor of free offer for sale in the home market, all other elements necessary to a determination of said foreign value are implicit in the findings of the appraiser, which are presumptively correct. *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. (Customs) 60, C. A. D. 371.

Attached to plaintiffs' collective exhibit 1 is a printed sheet setting forth regulations of the Wartime Prices and Trade Board, from which it would appear that the Canadian Government set maximum prices for the sale of merchandise at various levels.

The effect of said Canadian wartime regulations upon a finding of statutory foreign value of merchandise governed thereby has been the subject of extended litigation in this court. The decision in the present case was held in abeyance, pending the ultimate determination of that question, which was resolved in *United States* v. *F. W. Myers Company, Inc. (F. H. Leggett & Co.)*, 33 Cust. Ct. 578, A. R. D. 49, decided November 9, 1954, from which no appeal has been taken. It was there held that the establishment of ceiling prices by the Wartime Prices and Trade Board of Canada for different categories of purchasers, the price restriction extending to the resale of the merchandise, created a controlled foreign market and prevented a finding of foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended

by the Customs Administrative Act of 1938, as a proper basis for the appraisement of merchandise subject thereto. It follows, therefore, that there did not exist a statutory foreign value for the merchandise here in issue.

Plaintiffs herein contend that the proper basis of valuation of the present merchandise should be export value, which is defined in section 402 (d) of the Tariff Act of 1930 as follows:

The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Contained in plaintiffs' collective exhibit 1 is the following statement by affiant Cartledge:

We freely offered these articles for sale, without restriction, to all purchasers in the United States at the prices just set forth, depending upon the quantity purchased, and at no higher prices. The rulings of the Wartime Prices and Trade Board did not apply to goods exported to the United States.

This statement, however, would appear to be controverted by the report of Ralph E. Nelson, customs agent in charge at St. Paul, with accompanying correspondence, which is in evidence as defendant's collective exhibit A. It appears from said exhibit that The Kennoc Company of 79 East Fifth Street, St. Paul, Minn., is an affiliated corporation, owned, operated, and financed by the Kennedy Bros. Arms Company of the same address, and that said Kennedy Bros. Arms Company had instructed Guelph Elastic Hosiery Co., Ltd., of Guelph, Canada, the shipper herein, to have the merchandise "shipped and billed to the Kennoc Company as we are planning on handling all the sale of this merchandise through this organization."

Referring now to a communication addressed to Messrs. Kennedy Bros. Arms Company by the Guelph Elastic Hosiery Co., Ltd., forming part of collective exhibit A, *supra*, the following is extracted therefrom:

We were very much interested in your advice about Mr. Joseph Cooney of the Kennoc Co. and we note these people sell all over the United States. For the time being, we would be glad to give you exclusive sales for 1945 for the territories mentioned in your letter of January 17th—Minnesota, Wisconsin, Iowa, Illinois, Upper Peninsula Michigan, North & South Dakota and Montana, which we note is your natural trading area. We would not like to, at this time, give you exclusive rights over the entire United States as we do not know at this writing how much merchandise you would sell and whether or not you would be able to get rid of our entire surplus stock over domestic demands. However, at this time, it would appear that with the outlets of Kennedy Bros. Arms Co. and The Kennoc Com-

pany that you would be able to sell our entire surplus stock without trouble and we can assure you, if this is the case, we will not sell any other U. S. accounts and would only attempt to sell other accounts if we had surplus merchandise, which we do not expect to have. We trust the explanation will be satisfactory. (Excepting Athletic Store & Backarach-Rasin Co.)

It would appear, therefore, that in view of the exclusive sales agency granted to the Kennedy Bros. Arms Company covering a particular territory of the United States, merchandise such as is represented by the present importation is not freely offered for sale or sold for exportation to *all* purchasers in the United States. *United States* v. *Heemsoth-Kerner Corp. (Bauer Type Foundry, Inc.)*, 31 C. C. P. A. (Customs) 75, C. A. D. 252. It follows that statutory export value, as above set forth, did not exist.

The present record does not contain facts upon which to make a finding of United States value or cost of production for the merchandise before us. The Customs Administrative Act of 1938 requires that the court must determine the value of merchandise in every case the subject of an appeal for a reappraisement (*United States* v. *Joseph Fischer*, 32 C. C. P. A. (Customs) 62, C. A. D. 286). In the circumstances, the court is of the opinion that the ends of justice would best be served by setting aside the submission heretofore made and restoring the case to the next regular calendar, in order that the parties may present evidence of a United States value or, in its absence, cost of production, as provided by law.

In restoring this case to the calendar, we are not passing upon the motion of defendant to dismiss appeal for reappraisement No. 158787-A, alleged to be untimely, but are leaving that question for determination when the case is ultimately submitted for decision.

It is so ordered.